Filed 11/21/25  P. v. Ruiz CA2/1
Opinion following transfer from Supreme Court

### NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>MIGUEL ALBERTO RUIZ,<br><br>    Defendant and Appellant. | B323988<br><br>(Los Angeles County<br>Super. Ct. No. BA501067) |

APPEAL from a judgment of the Superior Court of Los Angeles County, H. Clay Jacke II, Judge.  Sentence vacated and remanded for resentencing.

Aaron J. Schechter, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters and Charles C. Ragland, Chief Assistant Attorneys General, Susan Sullivan Pithey, Assistant Attorney General, Roberta L. Davis and David A. Wildman, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Miguel Alberto Ruiz appeals from a judgment entered after a jury found him guilty of one count of stalking a victim and one count of violating a protective order pertaining to a different victim. Ruiz admitted two prior strike convictions, the trial court found five aggravating factors relating to Ruiz's prior convictions to be true, and the jury found five other aggravating factors to be true. The trial court sentenced Ruiz to six years in prison: the upper term of three years on the stalking count, doubled based on one of the prior strikes. He contends the court prejudicially erred in relying on some of the aggravating factors in imposing the upper term sentence. He also challenges a restitution fine and some assessments the court imposed.

In an opinion filed on March 25, 2024, we affirmed the judgment. We concluded the trial court erred in relying on three of the 10 aggravating factors, and we held the error was harmless. We also rejected Ruiz's challenge to the fine and assessments.

The Supreme Court granted Ruiz's petition for review and transferred the matter back to this court with directions to vacate our opinion and reconsider the matter in light of *People v. Lynch* (2024) 16 Cal.5th 730, 742-743 (*Lynch*), in which the Supreme Court announced the applicable test for determining prejudice, and *People v. Wiley* (2025) 17 Cal.5th 1069, 1076 (*Wiley*), in which the Supreme Court held that a defendant is entitled to a jury trial on two of the aggravating factors the trial court found to be true in the present case. Applying the standards set forth in *Lynch* and *Wiley*, we conclude Ruiz is entitled to resentencing due to prejudicial error, and we remand the matter for that purpose.

2

# BACKGROUND

## A.    Trial and Sentencing

A jury found Ruiz guilty of one count of stalking A.R., a felony (Pen. Code,[1] § 646.9, subd. (a); count 1), and one count of violating protective orders pertaining to A.S., a misdemeanor (§ 166, subd. (c)(1); count 2).[2]  The jury found five aggravating factors to be true:  (1) the "crime involved a threat of great bodily injury"; (2) "defendant was armed with or used a weapon, to wit: a knife or bricks, at the time of the commission of the crime"; (3) "defendant showed lack of remorse with respect to count 1 or count 2"; (4) "defendant committed the crimes in and around [v]ictim [A.R.'s] and [v]ictim [A.S.'s] homes"; and (5) "defendant made statements indicating an intent to kidnap [v]ictim [A.R.]." The jury's verdict form does not indicate that any true finding relates to a particular count.

Ruiz waived his right to jury trial on allegations that he had two prior strike convictions within the meaning of the "Three Strikes" law (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)).  He admitted a February 2020 strike conviction for battery causing serious bodily injury (§ 243, subd. (d)) and a February 2021 strike conviction for attempted first degree residential burglary (§§ 459 & 664).

The parties agreed that the trial court could decide whether aggravating factors relating to Ruiz's prior convictions and performance on probation or parole were true.  The court found

---

[1] Undesignated statutory references are to the Penal Code.

[2] We do not include a summary of the facts and 744circumstances of the offenses because our resolution of this appeal is not dependent upon the application of such facts.

3

the following five factors to be true: (1) Ruiz has engaged in violent conduct that indicates a serious danger to society (Cal. Rules of Court,[3] rule 4.421(b)(1)); (2) Ruiz's prior convictions as an adult or sustained petitions in juvenile delinquency proceedings are numerous or of increasing seriousness (rule 4.421(b)(2)); (3) Ruiz has served a prior term in prison or county jail (rule 4.421(b)(3)); (4) Ruiz was on probation, mandatory supervision, post release community supervision, or parole when the crime was committed (rule 4.421(b)(4)); and (5) Ruiz's prior performance on probation or parole was unsatisfactory (rule 4.421(b)(5)).

At a sentencing hearing on September 27, 2022, after considering the above-referenced factors in aggravation, as well as factors in mitigation advanced by Ruiz, the trial court sentenced Ruiz to six years in prison: the upper term of three years on count 1 (stalking), doubled based on one of the two prior strike convictions. The court imposed a concurrent one-year term for count 2 (violation of a protective order).

## B.    Proceedings on Appeal

Ruiz appealed from the judgment of his convictions, contending the trial court prejudicially erred when it relied on certain aggravating factors in imposing an upper term sentence on the stalking count. He challenged the trial court's true findings on the following three aggravating factors, arguing they could not be established by a certified record of conviction and should have been submitted to the jury: (1) Ruiz has engaged in

---

[3] Undesignated rules references are to the California Rules of Court.

4

violent conduct that indicates a serious danger to society; (2) Ruiz's prior convictions as an adult or sustained petitions in juvenile delinquency proceedings are numerous or of increasing seriousness; and (3) Ruiz's prior performance on probation or parole was unsatisfactory. He also challenged the court's reliance on the following aggravating factors found true by the jury, arguing the jury did not specifically find them to be true as to the felony stalking count, as opposed to the misdemeanor count for violation of a protective order: (1) the "crime involved a threat of great bodily injury"; (2) "defendant showed lack of remorse with respect to count 1 or count 2"; and (3) "defendant committed the crimes in and around [v]ictim [A.R.'s] and [v]ictim [A.S.'s] homes." Finally, he argued "lack of remorse is not a valid aggravating factor," and the court erred in relying on it in imposing the upper term. He did not challenge the sufficiency of the evidence supporting any of the aggravating factors. He also challenged a restitution fine and some assessments the court imposed, asserting his inability to pay.[4]

On March 25, 2024, we issued an opinion affirming the judgment. We agreed with Ruiz's contention that the trial court could not properly determine, based on his record of convictions, the subjective aggravating factor that he engaged in violent conduct that indicates a serious danger to society, and the factor should have been submitted to the jury. We also agreed with his contention that in imposing the upper term on the stalking count, the court could not rely on the aggravating factors that the crime

---

[4] In connection with our legal analysis regarding the fines and assessments, *post*, we discuss the related trial court proceedings and describe the fines and assessments at issue.

5

involved threat of great bodily injury or lack of remorse because it was not clear from the record whether the jury found these factors to be true as to the stalking count. We rejected his challenge of the other factors. We held that any error was harmless based on our conclusion the trial court would not have imposed a lower or middle term sentence in the absence of three out of the 10 aggravating factors. We acknowledged that the applicable harmless error standard was not settled and that the issue was pending in our Supreme Court. We also rejected Ruiz's challenge to the fine and assessments.

Ruiz filed a petition for review, and the Supreme Court granted it. Thereafter, the Supreme Court decided *Lynch*, *supra*, 16 Cal.5th 730, 742-743, in which it announced the test for determining prejudice, and *Wiley*, *supra*, 17 Cal.5th 1069, 1076, in which it held that a defendant is entitled to a jury trial on two of the aggravating factors found to be true by the trial court in the present case—the increasing seriousness of prior convictions and unsatisfactory performance on probation or parole. The Supreme Court transferred Ruiz's case back to this court with directions to vacate our opinion and reconsider the matter in light of *Lynch* and *Wiley*. We have vacated our prior opinion affirming the judgment of Ruiz's convictions.

## DISCUSSION

### A. Selection of a Term Under Section 1170, Subdivision (b)

Section 1170, subdivision (b) provides, in pertinent part: "(b)(1) When a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the court shall, in its

6

sound discretion, order imposition of a sentence not to exceed the middle term, except as otherwise provided in paragraph (2). [¶] (2) The court may impose a sentence exceeding the middle term only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term and the facts underlying those circumstances have been stipulated to by the defendant or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial. . . .”

## B.    *Lynch* and *Wiley*

In *Lynch*, *supra*, 16 Cal.5th at page 768, the Supreme Court stated:  “We hold that under the current [version of section 1170, subdivision (b)] a Sixth Amendment [right to jury trial] violation occurs when the trial court relies on unproven aggravating facts to impose an upper term sentence, even if some other aggravating facts relied on have been properly established. The violation is prejudicial unless an appellate court can conclude beyond a reasonable doubt that a jury would have found true *all of the aggravating facts* relied upon by the trial court to justify an upper term sentence, or that those facts were otherwise proved true in compliance with the current statutory requirements.  If the reviewing court cannot so determine, applying the *Chapman* [*v. California* (1967) 386 U.S. 18] standard of review, the defendant is entitled to a remand for resentencing.”  (Italics added.)

In *Wiley*, *supra*, 17 Cal.5th at page 1086, the Supreme Court concluded that “a defendant is entitled to a jury trial on all aggravating facts, other than the bare fact of a prior conviction and its elements, that expose the defendant to imposition of a

7

sentence more serious than the statutorily provided midterm."
(Fn. omitted.) Accordingly, the Court held that the right to jury
trial extends to the aggravating factors that a defendant's prior
convictions were of "increasing seriousness" and that a
defendant's prior performance on probation or parole was
"unsatisfactory." (*Id*. at pp. 1082-1083.) Absent the defendant's
waiver of the right to jury trial or stipulation to the facts, a trial
court may not rely on these factors in imposing the upper term
unless a jury finds the facts to be true. (*Id*. at p. 1085.)

**C.     Application of *Wiley* and *Lynch***

Applying *Wiley*, we agree with Ruiz's contention that in
imposing the upper term on the stalking count, the trial court
improperly relied on the following three aggravating factors that
were not submitted to the jury: (1) Ruiz's prior convictions as an
adult or sustained petitions in juvenile delinquency proceedings
are numerous or of increasing seriousness; (2) Ruiz's prior
performance on probation or parole was unsatisfactory; and
(3) Ruiz has engaged in violent conduct that indicates a serious
danger to society. Each of these factors requires a determination
of more "than the bare fact of a prior conviction and its elements."
(*Wiley*, *supra*, 17 Cal.5th at p. 1086.)

We also agree with Ruiz's contention that in imposing the
upper term on the stalking count, the trial court could not rely on
the aggravating factors that the "crime involved a threat of great
bodily injury" or "defendant showed lack of remorse with respect
to count 1 or count 2" because it is not clear from the verdict form
(or otherwise from the record) whether the jury found these
factors to be true as to the stalking count. To impose an upper
term sentence for a felony based on circumstances in aggravation,

8

the circumstances in aggravation must relate to *that particular* crime. (§ 1170, subd. (b)(2).) The trial court did not instruct the jury that these aggravating factors applied only to the felony stalking count and not to the misdemeanor count for violation of a protective order; nor did the prosecutor make that clear to the jury.[5]

We conclude the error was prejudicial. As explained in *Lynch*, if we cannot conclude beyond a reasonable doubt that a jury would have found to be true even one of the aggravating factors the trial court relied upon in imposing the upper term, we must remand for resentencing. (*Lynch, supra,* 16 Cal.5th at p. 768.) We cannot reach that conclusion with respect to the aggravating factor that Ruiz's prior convictions are numerous or of increasing seriousness.

During trial and for purposes of sentencing, Ruiz admitted a February 2020 conviction for battery causing serious bodily injury (§ 243, subd. (d)) and a February 2021 conviction for attempted first degree residential burglary (§§ 459 & 664). Certified records established these two convictions. The record does not show any other prior convictions.

---

[5] We disagree with Ruiz's contention that in imposing the upper term on the stalking count, the trial court improperly relied on the jury's finding that he "committed the crimes in and around [v]ictim [A.R.'s] *and* [v]ictim [A.S.'s] homes." (Italics added.) While Ruiz is correct that the verdict form does not specify to which count this finding pertains, it is clear that the jury made this finding as to *both* counts. If Ruiz committed a crime in and around A.R.'s home, as the jury clearly found, that crime could only have been the stalking count involving A.R. The record contains no evidence indicating that Ruiz violated a protective order pertaining to A.S. in or around A.R.'s home.

Based on the record before us, we cannot conclude beyond a reasonable doubt that a jury would have found Ruiz's two prior convictions to be numerous. (See, e.g., *People v. Berry* (1981) 117 Cal.App.3d 184, 191 [two prior convictions "cannot be 'numerous' "].) Nor can we conclude beyond a reasonable doubt that a jury would have found Ruiz's 2021 conviction for first degree attempted residential burglary was more serious than his 2020 conviction for battery causing serious bodily injury.[6] As Ruiz points out, the potential punishment for the 2021 crime is one, two, or three years (§§ 461, subd. (a) & 664, subd. (a)), less than the potential punishment for the earlier 2020 crime, which is two, three, or four years (§ 243, subd. (d)). (See *Wiley*, *supra*, 17 Cal.5th at p. 1089 ["As for Wiley's felony offenses, none is strikingly more serious than the others, either by reference to the nature of the offense or the punishment"].) Moreover, a rational jury could conclude that a crime resulting in serious bodily injury is more serious than an attempt to enter a residence with the intent to commit an unidentified felony. The Attorney General argues that the *completed crime* of first degree residential burglary is more serious than battery causing serious bodily injury. This argument is beside the point as Ruiz was not convicted of the completed crime.

We need not evaluate prejudice based on any of the other aggravating factors on which the trial court improperly relied.

---

[6] In his appellate briefing, Ruiz did not ask us to review the sufficiency of the evidence supporting this aggravating factor. Rather, he contended that only a jury, and not the trial court, was permitted to make the factual finding on this factor. In our now vacated opinion, we rejected the contention based on cases that the Supreme Court later disapproved in *Wiley*.

10

Under *Lynch*, one is enough, and we are required to remand the matter for resentencing.[7]

## D.    Fines and Assessments

In his supplemental brief after remand, Ruiz does not ask us to reconsider our analysis regarding the trial court's imposition of fines and assessments, and we conclude we have no cause to do so.  Accordingly, we incorporate herein the discussion from our now vacated opinion in this appeal.

### 1.    *Proceedings below*

Regarding fines and assessments, the trial court asked defense counsel, "Are there any financial issues regarding -- for the defendant regarding payment of the restitution fine, parole, and . . . the court security fee, criminal conviction facilities assessment[?]"  The following exchange occurred between defense counsel and the court:

"[Defense counsel]:  . . . I will just make the record, Your Honor, that my impression -- Mr. Ruiz has been borderline or actually homeless in the last few years.  I know he held out that he worked, but I've never seen any confirmation of that.  He's represented by the Office of the Public Defender which means he's presumptively indigent.

"The Court:  Well, that doesn't mean the defendant couldn't earn or have earnings such that he couldn't pay for a restitution fine or court security fee or criminal conviction facilities assessment just because he's represented by your office.

_____

[7] Ruiz requests that we decide whether lack of remorse is a valid aggravating factor and advise the trial court.  We decline, as it is not clear the prosecution will proceed on this factor at resentencing.

11

"[Defense counsel]: True. But I also have nothing -- so my representation to the court would be as I've already made it and that the court has discretion to waive those fines and fees as it deems appropriate subject to an ability to pay hearing. I'm not really prepared to go forward on an ability to pay hearing, Your Honor, but if the court wants to calendar one, happy to do it."

The trial court proceeded and imposed the following fines and assessments: the minimum restitution fine of $300 (§ 1202.4, subd. (b)), which the court stayed;[8] a $300 parole revocation fine, which was stayed unless parole was revoked (§ 1202.45); a $30 court facilities assessment for each of the two convictions, for a total of $60 (Gov. Code, § 70373); and a $40 court operations assessment for each of the two convictions, for a total of $80 (§ 1465.8). Accordingly, the total amount due was $140. The court further commented, "I do think he would have the ability to pay based upon any earnings he would accrue in state prison."

### 2. *Analysis*

Citing *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*), Ruiz contends in his opening appellate brief that the trial court "abused its discretion by arbitrarily and irrationally determining that [he] is able to pay" the fines and assessments imposed. He states that the court ordered him to pay a $300 restitution fine, plus $140 in assessments. As discussed above,

---

[8] The trial court stated on the record at the sentencing hearing: "As to the restitution fine, the court's going to impose the minimum of $300 -- as to count 1. And I'm going to either stay or strike it as the law permits." The court's September 27, 2022 minute order from the sentencing hearing states that the court stayed the restitution fine imposed under section 1202.4, subdivision (b).

12

the reporter's transcript and minute order from the sentencing hearing reflect that the court stayed the $300 restitution fine. Regardless, even if the court had ordered him to pay a total of $440 in fines and assessment, there would be no error here.

In *Dueñas*, *supra*, 30 Cal.App.5th 1157, the Court of Appeal held "due process of law requires the trial court to conduct an ability to pay hearing and ascertain a defendant's present ability to pay before it imposes court facilities and court operations assessments under Penal Code section 1465.8 and Government Code section 70373." (*Id*. at p. 1164.) The *Dueñas* court further held "the execution of any restitution fine imposed under [Penal Code section 1202.4] must be stayed unless and until the trial court holds an ability to pay hearing and concludes that the defendant has the present ability to pay the restitution fine." (*Ibid*.) We have previously disagreed with *Dueñas* (*People v. Kingston* (2019) 41 Cal.App.5th 272, 279-281), and the issue is currently pending in our Supreme Court. (*People v. Kopp* (2019) 38 Cal.App.5th 47, review granted Nov. 13, 2019, S257844.)

The facts in *Dueñas* were unique. The defendant was an unemployed, homeless mother with cerebral palsy, who lost her driver's license because she was unable to pay more than $1,000 assessed against her for three juvenile citations. Thereafter, she sustained multiple misdemeanor convictions related to driving with a suspended license, each time receiving a jail term and having additional fees she could not afford to pay imposed. (*Dueñas*, *supra*, 30 Cal.App.5th at pp. 1160-1162.) Ultimately, she requested a hearing on her ability to pay the fees, and the trial court imposed an additional fine and assessments—the same fine and assessments at issue here. (*Id*. at pp. 1162-1163.) In reversing the trial court's imposition of the assessments and

ordering the trial court to stay execution of the restitution fine, the Court of Appeal pointed out that Dueñas's current situation " 'doesn't stem from one case for which she's not capable of paying the fines and fees,' but from a series of criminal proceedings driven by, and contributing to, Dueñas's poverty." (*Id*. at p. 1164.) The appellate court in *Dueñas* referenced "the counterproductive nature of this system and its tendency to enmesh indigent defendants in a cycle of repeated violations and escalating debt." (*Id*. at p. 1164, fn. 1.)

Even assuming *Dueñas* was correctly decided and applicable to the facts of this case, we would reject Ruiz's challenge to the minimum restitution fine and assessments. Ruiz was 26 years old when he was sentenced to prison. A psychological report he submitted to the trial court with his sentencing memorandum indicates that as an adult, he worked in construction, gardening, remodeling hotels, and in a restaurant. He reported to the psychologist that he last worked in construction around March 2021, about a year and a half before he was sentenced. In assessing a defendant's ability to pay, a court may consider a defendant's "past income-earning capacity." (See *People v. Johnson* (2019) 35 Cal.App.5th 134, 139.) Moreover, a court may consider whether a defendant has the ability to satisfy the fine and assessments through prison wages and future earnings after release from custody. (*People v. Aviles* (2019) 39 Cal.App.5th 1055, 1076.) Given Ruiz's age and self-reported work history, there is no reason to believe he will be unable to earn money at some point in the future to pay the amount he owes.

14

**DISPOSITION**

The sentence is vacated and the matter is remanded for a full resentencing consistent with this opinion. In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED


M. KIM, J.

We concur:


BENDIX, Acting P. J.


WEINGART, J.